## MORRIS & CO. v. PECHENKA.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1918.)

No. 5023.

MASTER AND SERVANT ☞155(2)—INJURIES TO SERVANT—DUTY TO WARN.

Where an endless carrier, which was part of a meat-pressing machine and was made of narrow wooden slats fastened transversely to chains, traveled in a flat position except at the turns over wheels at each end of the machine, at which points the slats that ordinarily lay close together, separated only to close again when they had passed the wheels, a packing company using the machine was not guilty of negligence in failing to warn an adult, who had long been employed in the packing industry and had used the machine itself for some weeks, of the danger of his fingers catching between the slats when they opened over the wheels, for the defect was obvious, and the employé was as capable of understanding it as any one else.

In Error to the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Action by Joseph Pechenka against Morris & Co., a corporation. There was a judgment for plaintiff, and defendant brings error. Reversed, and cause remanded for new trial.

James C. Kinsler, of Omaha, Neb., for plaintiff in error.

David A. Fitch, of Omaha, Neb. (Ringer & Bednar and Gurley & & Fitch, all of Omaha, Neb., on the brief), for defendant in error.

Before HOOK, CARLAND, and STONE, Circuit Judges.

HOOK, Circuit Judge. Pechenka recovered a judgment against Morris & Co. for personal injuries sustained while working at a machine in its packing house at South Omaha, Neb. The charge of negligence on which the recovery proceeded was that there was a danger in the operation of the machine, unknown to him, of which the company failed to inform and warn him. On the other hand, the company claimed that whatever danger existed was so open and obvious that plaintiff as a man of ordinary intelligence should have seen and realized it.

The machine was for pressing pieces of hog carcasses. It was about six feet long, was supported by legs, and stood upon the floor. The part of it important here was an endless carrier, moving within the metal frame or standard. When in operation the pieces of meat were placed on the carrier at one end of the machine, carried forward under two superimposed cylinders for pressing, and then discharged to a table at the other end. The carrier was not unlike an endless moving sidewalk, or a broad belt in flat position, traveling horizontally, except at the turns over wheels at either end. It was about three feet wide, and was made of narrow wooden slats fastened transversely to chains. When in a horizontal position the sides or edges of the slats lay close together as the boards of a walk, but at the turns at the ends of the machine they opened and closed as they departed from and again approached a level. At the end of the machine, at which

the pieces of meat were discharged after being pressed, there was a long table placed close up to the slats of the carrier. The height or top of the table was even with the extreme outward bend of the carrier on its downward motion. It was therefore about the place of the widest opening between the edges of the slats. This was plaintiff's working place. His duty was to receive the pieces of meat from the carrier and keep them from piling up there and falling on the floor, by passing them back to other workmen at the table. He testified that from 15 to 20 times a day pieces of meat in being pressed under the cylinders would become fastened between the slats and would not loosely fall off on the table, and that in such cases it was his duty to detach them. The accident happened on an occasion of that kind. He put his hand under a piece of meat as it was being carried down on the slats and two fingers were caught and crushed. His testimony, with lack of certainty, was that his fingers must have been caught in the closing space between two slats. It is not clear how it could have happened that way. The slat openings did not begin to close above or at the level of the table, and the evidence of the proximity of the table to the machine made it unlikely that his hand or his arm was drawn below it, if indeed it were possible. It seems more probable from the record that his fingers were caught between the end of the table and the carrier; but we will take as a fact established, the one upon which the verdict was based.

The plaintiff was 48 years of age, and had been employed in packing houses in South Omaha for 16 years. He had been engaged at this pressing machine, performing the same duties, from 2 to 4 hours daily for 4 weeks before the accident. He had also worked at the other end of the machine, and had used the appliance there for starting and stopping it. At that end the order of the opening and closing of the slats of the carrier was the reverse of that at the end where he was injured. He had seen the machine in operation and at rest. There were guards at the sides of the metal frame of the machine covering the wheels and belts, but it cannot reasonably be said that its character and method of operation, including that of the carrier, were not discernible by a person of average intelligence using ordinary observation.

The machine was of a standard make, and it is not claimed here that it was defective in any particular, or that the endless carrier, while in motion, could or should have been guarded by a protective device. The verdict was not for either cause. The single contention is that the gradually closing edges of the slats on their downward return movement constituted a latent danger, and that the company should have warned the plaintiff of it. To warrant a recovery in such a case it should appear that the plaintiff did not know and appreciate the danger, and that his ignorance and failure to comprehend were excusable. In Kohn v. McNulta, 147 U. S. 238, 13 Sup. Ct. 298, 37 L. Ed. 150, the court said:

"It is not pretended that these cars were out of repair, or in a defective condition, but simply that they were constructed differently from the Wabash cars, in that they had double deadwoods or bumpers of unusual length to protect the drawbars. But all this was obvious to even a passing glance, and the risk which there was in coupling such cars was apparent. It required no

special skill or knowledge to detect it. The intervener was no boy, placed by the employer in a position of undisclosed danger, but a mature man, doing the ordinary work which he had engaged to do, and whose risks in this respect were obvious to any one. Under those circumstances he assumed the risk of such an accident as this, and no negligence can be imputed to the employer."

In Gleason v. Smith, 172 Mass. 50, 51 N. E. 460, it was said:

"The machine on which he was injured was an ordinary machine in perfect condition. * * * Although the plaintiff could not see the knives when the machine was in operation, there is nothing to indicate that an examination of the machine when it was at rest would not have shown that the guard did not fully cover the knives. * * * The defendant had no reason to suppose that he needed instruction in regard to this danger, and owed him no duty either to change the guards or to give him instruction or warning about it."

See, also, Connolly v. Eldredge, 160 Mass. 566, 36 N. E. 469; Mississippi River Logging Co. v. Schneider, 74 Fed. 195, 20 C. C. A. 390; King v. Morgan, 109 Fed. 446, 48 C. C. A. 507.

That the slats would close again on the turn was obvious to any person of ordinary powers. The danger inhered in the normal operation of the machine, and the plaintiff, who was a mature and experienced man, was as capable of knowing and understanding it as any representative of the company. The risk of fingers in a closing crack is generally learned by persons of average intelligence early in life, and plaintiff was entitled to no warning beyond that furnished by common experience.

The judgment is reversed, and the cause is remanded for a new trial.